IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                                    )
                                    )
    v.                              )   No. 17 CR 758
                                    )
DIJON FOSTON                        )   Judge Virginia M. Kendall
                                    )
                                    )

# MEMORANDUM OPINION AND ORDER

On November 16, 2017, Dijon Foston was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. 924(c)(1)(A). (Dkt. 1). Foston moved to suppress the evidence, namely the loaded firearm and marijuana, recovered following his arrest. (Dkt. 30). The Court held an evidentiary hearing on February 4, 2019 to resolve factual disputes relevant to the outcome of Foston's Motion. The parties also submitted post-hearing position papers. For the following reasons, Foston's Motion to Suppress is denied.

## BACKGROUND

At the evidentiary hearing, the government presented the testimony of Riverwoods Police Department Detective David Martinovich, Chicago Police

Department Commander Edward Wodnicki, and Chicago Police Department Lieutenant James Kubik.

On the evening of August 8, 2016 and into the morning of August 9, 2016, the Riverwoods Police Department and Detective Martinovich were notified of a string of vehicle burglaries and thefts. (2/4/19 Hearing Tr. at 14: 9-24). Prior to this particular batch of incidents, Detective Martinovich was aware of an ongoing auto theft ring in the Chicagoland area through his involvement in a task force investigating the LAFA section of the Gangster Disciple gang. (*Id.* at 14:25-15:10). The task force consisted of detectives from various suburban police departments, state police, and the Chicago Police Department. (*Id.* at 28:18-29:4). Commander Wodnicki, a member of the task force, testified that the stolen vehicles were being used throughout Chicago to commit violent crimes such as robberies, burglaries, and shootings. (*Id.* at 29:12-17).

One of the burglaries on the night of August 8, 2016 involved the theft of an Apple MacBook laptop, among other items, from a victim's vehicle. (*Id.* at 16: 4-15). The victim was able to track the real-time location of the stolen laptop through his desktop computer. (*Id.* at 16:22-17:11). Detective Martinovic viewed this information with the victim and also obtained the victim's access credentials so that he could track the laptop himself. *Id.* Through this tracking, Detective Martinovic came to believe that the person using the stolen laptop was an individual by the name of Deonte Bingham, a LAFA known to the task force at that time. (*Id.* at 17:14-23). During the investigation, Detective Martinovic became aware of Deonte Bingham's Facebook account where he posted numerous images of himself with narcotics and holding

weapons, including weapons with extended magazines. (*Id.* at 21:9-21). The laptop was tracked to several locations, including Deonte Bingham's residence on the southeast side of Chicago. (*Id.* at 18:1-12). The victim, wanting his laptop returned, activated an alert to be sent to the stolen laptop in which a message displayed that the victim was willing to buy back the stolen laptop for $500. (*Id.* at 18:24-19:12). The victim received a telephone call from the individual who had his laptop indicating that he would sell the laptop back to the victim. (*Id.* at 19:17-21). After further communication with that person, the victim and the individual agreed to meet in Chicago to exchange the laptop. (*Id.* at 19:23-20:5).

Detective Martinovic then spoke with Commander Wodnicki, who agreed that the stolen laptop was connected to the LAFAs. (*Id.* at 20:19-21:4). Commander Wodnicki also agreed to assist in the buy-back of the stolen laptop which was scheduled to occur at the corner of Roosevelt and Canal in Chicago on August 13, 2016. (*Id.* at 31:4-18). The buy-back involved Detective Martinovic, Commander Wodnicki, and a team of police officers from the district. (*Id.* at 34:9-13). Commander Wodnicki testified that he briefed the officers about the operation and instructed them that they should consider the individual to be armed and dangerous. (*Id.* at 34:14-18). The victim informed the individual with the laptop that he would be standing in front of the Bank of America wearing a red shirt. (*Id.* at 36:12-23). For safety reasons, Commander Wodnicki played the part of the victim during the exchange. (*Id.* at 36:24-25).

At approximately 6:00 p.m., Foston arrived at the buy-back location in a beige vehicle. (*Id.* at 35:23-25, 37:7-18). Foston approached Commander Wodnicki who asked if he had the stolen laptop. (*Id.* at 37:21-25). Foston responded that he had the laptop and directed Wodnicki to the car where Foston opened the driver side door and pulled the laptop from the passenger seat. (*Id.* at 38:1-4). Commander Wodnicki testified at the hearing that when he approached the vehicle he was concerned to see a black backpack in the rear of the vehicle. (*Id.* at 38:24-39:2). Once Commander Wodnicki had the laptop in his possession, he gave the arrest signal and Foston was arrested by the supporting officers. (*Id.* at 30:3-10).

Following the arrest, Lieutenant Kubik conferred with Commander Wodnicki, who authorized a search of Foston's vehicle. (*Id.* at 48:2-10). During his search of the vehicle, Lieutenant Kubik encountered a backpack in the rear of the vehicle in which he could see the butt of a gun. (*Id.* at 49:1-10). Lieutenant Kubik removed the gun, rendered it safe, and then removed a camera and a bag containing suspect cannabis from the backpack. (*Id.* at 49:14-50:21). Once the search was complete, Lieutenant Kubik seized the vehicle because it was located on private property and had it taken to Chicago Police Department Area Central by one of the officers on scene. (*Id.* at 50:2-12). It is Chicago Police Department policy to seize a vehicle that cannot be secured at a location. *Id.* An inventory search of the vehicle, including the contents of the backpack, was conducted once at Area Central. (*Id.* at 50:22-51:6).

# DISCUSSION

The government argues that Foston's Motion to Suppress should be denied as the search of his vehicle was lawful under any one of multiple exceptions to the Fourth Amendment's prohibition against warrantless searches, including the automobile exception, the search incident to arrest exception, inevitable discovery, and the inventory search exception. The Court takes the purported exceptions in turn, finding that each provides an independent legal basis to deny Foston's Motion.

At the outset, the Court addresses Foston's argument that he was arrested without probable cause. . It is not clear if Foston has abandoned this argument since he only presented it in his initial Motion to Suppress (Dkt. 30) and did not present it in his post-hearing brief. Regardless, the Court finds that the officers had probable cause to arrest Foston. Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, or is about to commit an offense." Here, probable cause is satisfied as the arresting officers reasonably believed that Foston had committed a crime—namely the theft of the laptop which he had in his possession at the time of the arrest. (Dkt. 2/4/19 Hearing Tr. at 38:1-4). The officers clearly had reason to believe that Foston was the individual who would be in possession of that laptop as they approached him because of the owner's tracking device and subsequent communication with the person who was in possession of his computer. That person agreed to meet at the

location and at the time when Foster appeared with the stolen computer. Therefore, there was probable cause to arrest him with for possessing the stolen property.

**I. Automobile and Search Incident to Arrest Exceptions**

The automobile exception and the search incident to arrest exceptions "are interrelated, but not identical." *U.S. v. Edwards,* 769 F.3d 509, 514 (7th Cir. 2014). The automobile exception permits warrantless searches of vehicles when police "have probable cause to believe it contains evidence of criminal activity." *Id.* The second exception authorizes a warrantless search of a vehicle when "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant,* 556 U.S. 332, 351 (2009). The suspicion required for a search incident to arrest (*Gant*) is necessarily intertwined with the offense of the arrest while the automobile exception is not. *Edwards,* 769 F.3d at 514. While the Court's "reasonable to believe" language in *Gant,* may very well suggest a less demanding standard than probable cause, the Seventh Circuit has not addressed the potential distinction and a resolution is not necessary here. *See id.* The search of Foston's vehicle was permissible under both the automobile exception and *Gant.* Further, the automobile exception was not rendered inapplicable once Foston was detained. *U.S. v. Washburn,* 383 F.3d 638, 641 (7th Cir. 2004).

The automobile exception provides for warrantless searches when officers have probable cause to believe that the vehicle "contains evidence of criminal activity." *Edwards,* 769 F.3d at 514. Here, probable cause existed in the form of the officers'

belief that other evidence related to the theft of the laptop could be present and that there could be evidence related to the string of vehicle burglaries that occurred just days prior. In his briefing, Foston focuses solely on the theft of the laptop while conveniently disregarding that the victim reported other items missing from his vehicle. (2/4/19 Hearing Tr. at 16:10-18) ("…and somebody entered his vehicle and stole his Apple MacBook and also some other items from his vehicle."). The fact that Foston was in possession of the stolen laptop and attempting to sell it is more than enough to supply the probable cause necessary for the responding officers to believe that the vehicle contains evidence of criminal activity, particularly the theft of other items stolen from the victim's vehicle at the same time as the laptop. For these same reasons, the officers had reason to believe that the vehicle contained evidence of the theft—satisfying the incident to arrest exception under *Gant*.

Additionally, the searching officers had probable cause to believe that the vehicle contained evidence relating to the rash of burglaries in the Riverwoods area. Detective Martinovich and Commander Wodnicki were involved in the investigation of a crime spree involving stolen vehicles and the theft of items from vehicles just days prior to the laptop buy-back where Foston was arrested. Through the tracking capability of the laptop, the officers learned that the laptop was at Deonte Bingham's residence. Bingham was a known LAFA gang member who was believed to have been involved in the vehicle theft spree. Based on this knowledge, the officers had probable cause to believe that Foston's vehicle contained evidence stemming from the string of thefts perpetrated in the days preceding the buy-back.

## II. Inevitable Discovery and Inventory Search Exception

Even in the absence of either the automobile or *Gant* exception, Foston's Motion to Suppress is properly denied as the inevitable discovery doctrine applies. The inevitable discovery doctrine instructs that "illegally seized evidence need not be suppressed if the government can prove by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means." *U.S. v. Pelletier,* 700 F.3d 1109, 1116 (7th Cir. 2012) (citing *Nix v. Williams,* 467 U.S. 431, 442-44 (1984)). It is the government's burden to demonstrate "(1) 'that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence'; and (2) 'that it would have conducted a lawful search absent the challenged conduct.'" *Id.* at 1116 (quoting *U.S. v. Marrocco,* 578 F.3d 627, 637-38 (7th Cir. 2009).

For its part, the government argues that the evidence Foston now seeks to suppress would have been discovered during a lawful inventory search of the vehicle. "Warrantless inventory searches of cars in police custody are also proper as long as the police lawfully have custody of the vehicles." *U.S. v. Cherry,* 436 F.3d 769, 775 (7th Cir. 2006) (internal quotations omitted). Therefore, the evidence of the firearm and cannabis need not be suppressed so long as the police had lawful custody of Foston's vehicle at the time they conducted the inventory search. Here, Foston's vehicle was lawfully seized and impounded for purposes of public safety and community care. Similar to the circumstances in *Opperman* where the defendant's vehicle was illegally parked and subjected to impoundment, Foston's vehicle was

parked in a private parking lot subject to being towed. *See South Dakota v. Opperman,* 428 U.S. 364, 376 (1976). Indeed, the impoundment of Foston's vehicle fits squarely within the litany of justifications the *Opperman* Court found to be "beyond challenge." *Id.* at 369 (writing that seizure of vehicles impeding traffic, threatening public safety, violating parking ordinances, and jeopardizing public safety are all sufficient justifications for police to seize and remove a vehicle from the streets). In short, "[a]n impoundment is permissible so long as it is supported by probable cause or is 'consistent with the police role as 'caretakers' of the streets.'" *Holm v. Village of Coal City,* 345 Fed.Appx. 187, 190 (7th Cir. 2009) (quoting *U.S. v. Duguay,* 93 F.3d 346, 352 (7th Cir. 1996). Foston's vehicle was parked in a private parking lot designated for customer parking only and was subject to being towed. By impounding the vehicle, the officers were merely exercising their community caretaking responsibility.

"Warrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *U.S. v. Pittman,* 411 F.3d 813, 817 (7th Cir. 2005). At the evidentiary hearing, Lieutenant Kubik testified regarding Chicago Police Department General Order G07-01 and Special Order S07-01 which set forth the process for conducting an inventory of property taken into police custody. (2/4/19 Hearing Tr. at 55:16-22). Lieutenant Kubik specifically testified that the inventory process is meant "to document anything that may be of value or personal property

that's in the vehicle" and that the procedure "protects the officers, the City of Chicago, from any claims that anything was removed from the vehicle when that person gets their vehicle back." *(Id.* at 57:22-58:3). Once the vehicle was brought to Area Central, Lieutenant Kubik conducted the vehicle inventory consistent with department policy. *(Id.* at 58:4-10). Even if Lieutenant Kubik had faltered in strictly following the procedure to inventory the contents of the vehicle, the inevitable discovery doctrine "considers a hypothetical situation" of whether the evidence would have been found had an inventory search been conducted and not necessarily whether it was actually discovered through that method. *See U.S. v. Cartwright,* 630 F.3d 610, 616 (7th Cir. 2010) ("In any event, we have held that minor deviations from department policy do not render an inventory search unreasonable."). Here, there is little question that it would have. In sum, police officers acted lawfully in seizing Foston's vehicle pursuant to their community caretaking function. Additionally, officers followed standard procedure in conducting an inventory search of Foston's vehicle and consequently the Motion would also be denied due to the inevitable discovery doctrine.

## **CONCLUSION**

For the reasons stated above, Foston's motion to suppress (Dkt. 30) is denied.

_____
Virginia M. Kendall
United States District Judge

Date: April 5, 2019